COUNTY OF SAGINAW *v.* KENT.

1. COUNTIES—TREASURER'S BOOKS—EXAMINATION — ENTRIES — NO-
   TICE.
   The official books of the county treasurer are presumed to
   show the correct amount due from that officer to the
   county at all times, and where no entry of interest money
   was made therein, it cannot be presumed that the board
   of supervisors, from its examination of the treasurer's
   books once each year, had notice that he was appropri-
   ating to his own use such interest money belonging to
   the county.

2. SAME—BOARDS—POWERS EXERCISED AS BOARDS.
   The powers of county boards must be exercised by them
   as boards and not as individuals.

3. SAME—LIMITATION OF ACTIONS—ACTION ON COUNTY TREASURER'S
   BOND—NOTICE TO INDIVIDUAL NOT NOTICE TO BOARD.
   Under 3 Comp. Laws 1915, § 12330, providing that where
   a right of action has been fraudulently concealed by the
   person liable, action may be brought within two years
   after the person entitled to same shall discover it, al-
   though the action would otherwise be barred by the stat-
   ute of limitations, knowledge by individual members of
   the board of supervisors that the county treasurer was
   appropriating to his own use interest money rightfully
   belonging to the county was not such notice to the board
   as to bar its right of action on the treasurer's official
   bond to recover same.

4. SAME — TRIAL — EVIDENCE — NOTICE TO INDIVIDUAL MEMBER OF
   BOARD.
   A ruling by the trial court that testimony tending to show
   such knowledge on the part of individual members of the
   board was not admissible, unless some action taken by
   the board could be shown, or that it was openly discussed
   upon the board, *held*, not prejudicial to defendant.

5. SAME—FRAUDULENT CONCEALMENT OF RIGHT OF ACTION.
   Evidence *held*, sufficient to present the question of fraudu-
   lent concealment of the cause of action by defendant treas-
   urer as one of fact for the jury.

6. SAME—NOTICE.

Where a bond to plaintiff by a bank as depository of county funds provided that interest should be paid after July 1, 1905, plaintiff is chargeable with knowledge of all facts as to this interest which the examinations of the board should disclose.

7. LIMITATION OF ACTIONS—COUNTIES—ACTION ON COUNTY TREAS-URER'S BOND.

Where the ten years provided by the statute of limitations (3 Comp. Laws 1915, § 12323) did not begin to run until December 31, 1906, when defendant's term of office ended and it became his duty to deliver the funds of his office to his successor, a suit on defendant's official bond, started on July 15, 1916, was not barred by said statute.

8. COUNTIES—COMPROMISE AND SETTLEMENT.

A settlement of an action against a depository bank, on its bond to the county, which did not include any interest money paid defendant treasurer, *held,* not a bar to this action although the declaration in that action counted on the bond given by the bank during defendant's term of office as well as on three successive bonds.

9. SAME—QUESTION FOR JURY.

Testimony as to an item of interest charged against defendant, *held,* to raise a question of fact for the jury.

10. SAME—PRINCIPAL AND SURETY—LIABILITY OF SURETY.

Defendant surety cannot avoid liability on its bond for money credited by the bank to defendant treasurer after the expiration of his term, where said money belonged to the county and was under his control at the expiration of his term, and which he did not deliver to his successor in office.

11. SAME—NOTICE TO MEMBER OF FINANCE COMMITTEE NOT NOTICE TO BOARD.

Knowledge by one member of the finance committee of plaintiff board, which examined defendant's books each year, that defendant was taking interest money belonging to the county, where not shown to have been imparted to the board, *held,* not binding upon the latter.

Error to Saginaw; Snow (Ernest A.), J. Submitted January 7, 1920. (Docket No. 17.) Decided February 27, 1920.

209—Mich.—11.

Assumpsit by the county of Saginaw against Fred W. Kent, principal, and the United States Fidelity & Guaranty Company of Baltimore, Maryland, surety, on an official bond. Judgment for plaintiff. Defendants bring error. Affirmed.

*Robert H. Cook* (*Frank D. Eaman,* of counsel), for appellants.

*Riley L. Crane,* Prosecuting Attorney (*John F. O'Keefe* and *Bird J. Vincent,* of counsel), for appellee.

CLARK, J. In November, 1902, Fred W. Kent was elected treasurer of the county of Saginaw for the term of two years. He qualified according to statute and filed his bond upon which defendant the United States Fidelity & Guaranty Company was surety. In November, 1904, he was re-elected county treasurer, again qualified, and again the United States Fidelity & Guaranty Company was surety upon his bond. His two terms of office began with January 1, 1903, and ended with December 31, 1906. The bonds were conditioned as provided by statute, 1 Comp. Laws 1915, § 2362, and were practically identical in form. The condition of the first bond was:

"Now, therefore, the condition of this obligation is such, that if the said Fred W. Kent, his deputy and all persons employed in his office shall faithfully and properly execute their respective duties and trusts, and shall pay according to law all moneys which shall come into his hands as such treasurer, and will render a just and true account thereof, whenever required by the board of supervisors, or by any provision of law, and shall deliver to his successor in office, or to any person authorized to receive the same, all books, papers, and other things belonging to said office, then this obligation to be void, otherwise to remain in full force and effect."

Act No. 654, Local Acts 1905, became effective June 16, 1905, and provided in part:

"SEC. 5. It shall be the duty of the county treasurer of the county of Saginaw, to deposit the receipts of said office to the credit of the county of Saginaw in such bank or banks incorporated under the laws of this State or of the United States, as may be designated by the board of county auditors of said county, as the depository of the funds of the county. All moneys deposited in such bank or banks shall bear interest at a rate to be approved by the said board of county auditors, to be computed upon weekly balances and placed to the credit of the county on the 31st day of December and the 30th day of June in each year, and at any time when the account may be closed.

"SEC. 6. Before any deposit shall be made with any bank or banks, as aforesaid, such bank or banks shall execute and deliver to said board of county auditors a bond in such sum and with such sureties as shall be approved by said board of county auditors, the judge of probate and the prosecuting attorney of such county. Such bonds shall be made to the county and shall be conditioned for the safekeeping and repayment of such moneys, or any part thereof, on demand, and the payment of such interest. * * *

"SEC. 7. All interest moneys so paid by any bank or banks on the deposits as aforesaid shall be credited to and form a part of the general fund of the county."

Pursuant to the provisions of such local act the Commercial National Bank of Saginaw was designated as the county depository, and on August 31, 1905, the bank filed its bond conditioned as follows:

"Now, the condition of this obligation is such, that, whereas, the said county of Saginaw, Michigan, contemplates depositing certain of its moneys in the said Commercial National Bank of Saginaw, which moneys said bank hereby agrees to receive, safely keep for said county, and pay interest thereon from the first day of July, 1905, at the rate of three per cent. per annum to be computed on the average weekly balances of said moneys, and to be credited to the said county at the end of exchange for said county on Detroit, without cost in the transfer of funds during the time said moneys are so held by it. Said bank agrees to

safely keep said moneys and repay them, principal and interest, on demand of any sum by the county treasurer of Saginaw county, or his duly authorized deputy.

"Now, therefore, if the said Commercial National Bank of Saginaw, Michigan, shall well and truly keep and perform the above agreements and conditions, then this obligation to be void, otherwise to remain in full force and virtue."

Prior to such designation of depository it is not claimed that it was the duty of the treasurer to deposit the public funds in a bank or other depository nor is it disputed that if the treasurer received interest from deposit of public funds it was his duty to account for it to the county. During his first term, and during his second term until August 24, 1905, when such designation of depository was made by the board of auditors under the local act, Treasurer Kent had the public funds of his office deposited in the Commercial National Bank in his name as treasurer and as interest upon such funds he received from the bank, from time to time, money which he converted to his own use and for which he failed to account to the county and of which no entry was made in the books of his office. Following the designation of depository and on August 26, 1905, Treasurer Kent arranged for deposit of public funds at the designated bank in two accounts, one in the name of "Fred W. Kent, county treasurer," the other under the caption, "Fred W. Kent, county treasurer, special," and thereafter to the end of his term of office from time to time he deposited public funds in both accounts. It is claimed that the bank credited the county with some interest items upon the funds in the account of "Fred W. Kent, county treasurer" and it is also claimed that Mr. Kent collected at different times and converted to his own use interest upon funds in the account of "Fred W. Kent, county treasurer, special," making no entry

thereof in the books of his office.  June 1, 1916, the plaintiff had an audit of the treasurer's books and of the accounts of the bank covering a period of years including 1903, 1904, 1905, and 1906, and claims that it then had its first knowledge and notice of these shortages.  Following the audit suit was commenced against the bank upon its bonds as depository, which bonds included the bond given in August, 1905, and similar bonds given after January 1, 1907, to recover, as plaintiff claims, sums of interest which had not been paid to its treasurers, which suit was settled. And on July 15, 1916, plaintiff commenced this suit upon the official bonds of Mr. Kent covering his four years in office to recover the interest paid by the bank to Treasurer Kent and retained by him.  The cause was tried by jury who returned a verdict for plaintiff for $14,055.82, upon which judgment was entered and the defendant surety has removed the cause to this court by writ of error.

There are 113 assignments of error, discussed by counsel under five heads:

1. The statute of limitations.

Section 12323, 3 Comp. Laws 1915, is in part as follows:

"SEC. 13. All actions in any of the courts of this State shall be commenced within six years next after the causes of action shall accrue, and not afterward, except as hereinafter specified: *Provided, however,*

"1. That actions founded upon judgments or decrees rendered in any court of record of the United States, or of this State, or of some other of the United States, and actions founded upon bonds of public officers, actions founded upon covenants in deeds and mortgages of real estate, may be brought at any time within ten years from the time of the rendition of such judgment, or the time when the cause of action accrued on such bond or covenant."

Section 12330 is as follows:

"Sec. 20. If any person who is liable to any of the actions mentioned in this chapter, shall fraudulently conceal the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within two years after the person who is entitled to bring the same shall discover that he had such cause of action, although such action would be otherwise barred by the provisions of this chapter."

It is the claim of the defendants that under the statute there can be no recovery for items of interest taken by Mr. Kent during 1904, 1905, and up to July 15, 1906, being beyond the 10-year period. The plaintiff claims that the cause of action was fraudulently concealed from it and that upon discovery of the same it promptly commenced this suit. It was the duty of the board of supervisors as often as once in each year to examine the accounts of the treasurer of the county and to ascertain and enter upon the records of the board a full statement of such account. Section 2269, 1 Comp. Laws 1915. The board of supervisors performed this duty and there being no entry of these interest items in the accounts of Treasurer Kent prior to July, 1905, it is claimed that from such examination and statements covering such period the board did not have knowledge or notice that the treasurer was unlawfully taking such sums of interest.

"The official books of the county treasurer are presumed to show the correct amount due from that officer to the county at all times." *Board of Sup'rs of Chippewa Co.* v. *Bennett*, 185 Mich. p. 562.

Each year during Mr. Kent's incumbency of office when the committee of the board of supervisors checked over the receipts and disbursements of the county treasurer's office from the books of his office for the purpose of examination of accounts and record thereof under the statute there was submitted to the board a statement or schedule of the annual receipts and disbursements of the county treasurer which state-

ment or schedule was prepared in the office of the county treasurer either by himself or his deputies and which schedule was entitled, "county treasurer's statement." None of the interest money which it is claimed Treasurer Kent appropriated appeared in these statements or schedules. It is the claim of plaintiff respecting the fraudulent concealment that this was an affirmative act on the part of the treasurer. The defendants had testimony tending to prove that it was commonly known that Treasurer Kent was taking interest money, that such had been the practice of other treasurers, that some individual members of the board of supervisors had knowledge of it, or had heard of it, or believed that the treasurer was entitled to it, and defendants offered further testimony tending to show such knowledge on the part of certain individual members of the board, which testimony was excluded, and the trial court said:

"I think, unless you can follow up this with the knowledge of the individual supervisor, by some action taken by the board, I shall exclude the testimony."

Defendants' counsel said:

"I do not know whether we can connect that with any official action of the board of supervisors."

The trial court again said:

"I think if this was discussed openly upon the board of supervisors, during this period, his period of administration, you may show that."

By this ruling defendants were not prejudiced:

"The powers of county boards must be exercised by them as boards and not as individuals. An individual member unless expressly authorized cannot bind the county by his acts, and notice to or knowledge by an individual member not shown to have been imparted to the board is not binding upon the latter." 11 Cyc. p. 391.

See, also, 15 C. J. p. 460; *Ilsley* v. *Essex County*, 7

Gray (Mass.), 465; *Clayton & Co.* v. *Galveston County,* 20 Tex. Civ. App. 591 (50 S. W. 737); *Stoner* v. *Keith County,* 48 Neb. 279 (67 N. W. 311).

From a consideration of all of the evidence we think the question of the fraudulent concealment of the cause of action became one of fact for the jury. See *Wolkins* v. *Knight,* 134 Mich. 648, 649; *Allen* v. *Conklin,* 112 Mich. 74; *Tompkins* v. *Hollister,* 60 Mich. 470; *Stebbins* v. *Patterson,* 108 Mich. 537; *Johnson* v. *Insurance Co.,* 12 Mich. 216.

By the conditions of the bond given plaintiff by the bank as depository, interest was to be paid upon bank balances after July 1, 1905, and the plaintiff is chargeable with knowledge of all facts as to this interest which the examinations of the board should disclose, but the plaintiff correctly claims under the facts of this case as to interest taken by Treasurer Kent during the two-year term ending with December 31, 1906, that the statute of limitations did not begin to run until the expiration of the term, when it became his duty to deliver the funds of his office to his successor. Recovery therefore of funds taken by Treasurer Kent during such term was not barred by statute. 22 R. C. L. p. 511.

2. Was the settlement of the suit of the County of Saginaw v. Commercial National Bank an absolute bar to a recovery here as to any items of interest paid Kent after July 1, 1908? The parties to that suit were the county of Saginaw and the Commercial National Bank. The declaration had a count upon the bond given to the county by the bank as depository in August, 1905, when Kent was treasurer, and upon three other similar bonds given by the bank to the county during the terms of succeeding county treasurers. A second count had an averment that the bank had conspired with treasurers of plaintiff to defraud the plaintiff. A third count was upon the common

counts in assumpsit. A bill of particulars was furnished and no claim was made for the interest paid by the bank to Treasurer Kent. The accountant testified:

"Well, briefly, we show the total interest on the regular account and the total interest accrued on the special account, and figured up $51,832.53; which, according to our computation, is the total interest at the various contract rates prescribed in these agreements, the total interest, due from the bank to the county of Saginaw on their contract.

"We then figured the total on the bank's regular account, the total paid on the bank's special account, showing paid $42,591.58, which includes all of the items which we enumerate in this report as having been paid out as interest during Mr. Kent's administration and not accounted for to the county. The difference, $9,240.95, represents the balance which the bank should have paid had they paid the full contract rate of interest.

"*Q.* Now, that $9,150.95 the amount of that check that was given by the Commercial National Bank to Saginaw county, is there included in that amount any of the items that you report as being received by Fred W. Kent from the Commercial National Bank and not accounted for to the county of Saginaw?

"*A.* No, it does not."

In the instant case the declaration of the plaintiff county of Saginaw is upon the official bonds of Mr. Kent as county treasurer and against him as principal and the other defendant as surety to recover of them funds of the county which came into Mr. Kent's hands while he was county treasurer and of which he made no account to the county. The settlement of the suit against the bank is not a bar to recovery here. 1 C. J. p. 1118; 23 Cyc. p. 439; 1 R. C. L. p. 343; *Lee* v. *Taylor*, 11 N. Y. Supp. 131.

3. In plaintiff's bill of particulars there was charged against the defendant an item, August 31, 1905: Interest on public money $1,465.34. Defendants claim

this charge is unsupported by proof. The journal and ledger entries of the bank as to this item were introduced and explained and shown to have been made by a bookkeeper, deceased at the time of the trial. A review of the evidence as to this item will profit no one. From a comparison of the interest accounts and a consideration of the contradictory evidence as to this item we are inclined to the view of the trial court that there was a question of fact.

4. The bill of particulars charged defendant Kent with having received of plaintiff's funds $240.17 on January 14, 1907, and $350 on January 17, 1907. The defendant surety claims that as these are charged to have been received after Mr. Kent's term of office had expired it is not liable therefor. There was some evidence tending to show that defendant Kent received these sums during his term of office, but we think it is undisputed that these items were funds of the county which Treasurer Kent had under his control at the expiration of his term and which he did not deliver to his successor in office.

5. The refusal of the court to give certain requests to charge. What has been said disposes of part of these requests. The substance of the remaining requests was:

"If the members of the auditing committee of the board of supervisors, on auditing the books and accounts of Fred W. Kent, had reason to believe that Fred W. Kent was receiving interest which belonged to the county, that it was their duty then to ascertain the amount and to take such steps as would apprise the county of the facts; and, if they did not do so, the county cannot claim there was fraudulent concealment of this cause of action."

We have seen that the statute made it the duty of the board at least once in each year to examine the accounts of the treasurer and to enter upon the records of the board a full statement of the account. Sec-

tion 2269, 1 Comp. Laws 1915. To facilitate its work the board each year appointed what it called a finance committee of five members and the committee was directed "to take up the usual work of checking the books, vouchers, etc., of the county treasurer's office." During the time in question such committees made reports to the board to which reports were appended the county treasurer's statements of receipts and disbursements. The reports were accepted, adopted and recorded by the board. Covering Mr. Kent's first term of office in these records, reports, county treasurer's statements and treasurer's accounts there is no entry of, or reference to, the interest items, and, we think, nothing to charge the board with knowledge or notice that the treasurer was receiving and taking interest on the public funds. Defendants had testimony that at least one member of the finance committee during such time had heard that Treasurer Kent was taking interest money and offered some further testimony to the same effect, which was excluded. This is covered by the rule already stated. 11 Cyc. p. 391. Knowledge or notice by an individual member of the board, though a member of its finance committee, not shown to have been imparted to the board, is not binding upon the latter. By statute the duty to examine the treasurer's accounts was upon the board and in the discharge of that duty, though assisted by its committee, it must act as a board. *Vincent v. Board of Sup'rs of Mecosta Co.*, 52 Mich. 340; *People v. St. Clair County Officers*, 15 Mich. 85; *The Advertiser & Tribune Co. v. City of Detroit*, 43 Mich. 116.

The questions raised have been considered. The charge of the trial court was fair and comprehensive. No prejudicial error is found.

The judgment is affirmed.

MOORE, C. J., and STEERE, BROOKE, STONE, BIRD, and SHARPE, JJ., concurred. FELLOWS, J., did not sit.